## SNYDER v. HAUSHEER.

(Circuit Court of Appeals, Eighth Circuit. November 6, 1920.)

No. 5487.

1. **False imprisonment ⬱3—Complaint held one for false imprisonment.**

   A complaint alleging that defendant town marshal without probable cause and without a warrant imprisoned plaintiff, and praying for exemplary damages, with allegations of malice and bad faith, *held* one for false imprisonment, and not for malicious prosecution.

2. **False imprisonment ⬱4—Officer's malice immaterial, if warrant justified arrest.**

   If defendant town marshal was justified by his warrant in arresting plaintiff, evidence as to defendant's acts and declarations, tending to show malice or bad faith in making the arrest, became immaterial.

3. **False imprisonment ⬱7 (3)—Warrant fair on its face protects officer.**

   Under Comp. St. Wyo. 1910, § 5902, defining breach of the peace, section 6131, providing that prosecuting attorneys may verify informations on information and belief, section 1645, as to duties of marshals, and section 1226, as to executing process, and Const. Wyo. art. 5, § 22, as to jurisdiction of justices of the peace, a town marshal was not liable_for false imprisonment, where he arrested plaintiff on a warrant charging breach of the peace, issued by a justice of the peace, on the sworn complaint of the county and prosecuting attorney, and confined plaintiff in jail pending inquiry, after having telephoned the justice of the peace and received no answer; defendant being a ministerial officer only, protected by a warrant fair on its face.

In Error to the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Action by Albert W. Hausheer against John Snyder and another. Judgment against the named defendant, and he brings error. Reversed, and new trial granted.

James H. Devine, of Ogden, Utah (David L. Stine, Roscoe C. Gwilliam, and J. D. Murphy, all of Ogden, Utah, on the brief), for plaintiff in error.

Paul W. Lee, of Ft. Collins, Colo. (George H. Shaw, of Ft. Collins, Colo., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

CARLAND, Circuit Judge. The defendant in error, hereafter called plaintiff, brought this action against plaintiff in error, hereafter called defendant, and the Wyoming Sugar Company, to recover damages for false imprisonment. The case was tried to a jury, and at the close of all the evidence counsel for defendants moved for a directed verdict. The motion was granted as to the Sugar Company and denied as to the defendant. The court thereupon, on its own motion, directed a verdict for the plaintiff, except as to the amount of damages. The jury rendered a verdict in favor of the plaintiff in the sum of $2,000, upon which judgment was entered. Counsel for defendant excepted to the refusal of the court to direct a verdict in favor of the defend-

---

⬱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ant, and also to the action of the court in directing a verdict for the plaintiff, except as to the question of damage. The case is now before us for review; the above rulings of the court being assigned as error.

With the Sugar Company out of the case, the charge of conspiracy between the company and the defendant, as alleged in the second cause of action, necessarily failed, leaving the defendant as the only party against whom a recovery could be had.

[1] It is claimed by counsel for plaintiff that the action is more than one for false imprisonment. We do not understand what the cause of action would be, if it was for more than false imprisonment. The action is certainly not one for malicious prosecution, as only the officer who imprisoned the plaintiff is sued. In both the first and second causes of action it is alleged that the defendant without probable cause and without a warrant, or any other order of arrest, imprisoned the plaintiff for 10 hours in a filthy cell in the jail located at Worland, Wyo. The complaint prayed for $10,000 exemplary damages, and necessarily it contains allegations in regard to malice and bad faith; but these allegations do not change the cause of action from false imprisonment to something more, whatever that may mean. The trial court told the jury that the action was one for false imprisonment in the charge to the jury on the question of damage.

The defendant by his answer admitted that he arrested and imprisoned the plaintiff, but denied that said imprisonment was without probable cause or without a warrant. He also pleaded that at the time of the arrest he was town marshal of the town of Worland, Wyo., and that on September 12, 1917, a criminal complaint charging the plaintiff with having committed a breach of the peace was duly executed and filed in the office of J. W. Pulliam, a justice of the peace in and for the county of Washakie, Wyo., and a warrant was duly issued thereon by said justice of the peace, charging plaintiff with having committed a breach of the peace, and that said warrant was placed in the hands of defendant as town marshal of the town of Worland, which warrant required the defendant to apprehend and take into his custody the plaintiff; that the defendant did apprehend and arrest the plaintiff under and by virtue of said warrant, which he had in his possession, and confined him in the jail in said town of Worland, for the reason that the arrest was made at a late hour of the day and said justice of the peace was not at his office and could not be found at the time of said arrest.

[2] The only evidence introduced at the trial was that on the part of the plaintiff. There was much evidence introduced for the purpose of showing that the Sugar Company had something to do with the arrest and imprisonment of the plaintiff; also evidence in regard to the acts and declarations of the defendant tending to show malice or bad faith in making the arrest. But, if the defendant was justified by his warrant, these matters become immaterial, especially as a verdict was directed in favor of the Sugar Company. The evidence showed that on the evening of September 12, 1917, Pulliam, who was a justice of the peace in the town of Worland, Wyo., delivered a warrant to the defendant of which the following is a copy:

"The State of Wyoming, County of Washakie—ss.:

"To the Sheriff or Any Constable of Said County—Greeting:

"Whereas C. H. Harkins, county and prosecuting attorney of said county, has this day complained to me, on oath, that A. W. Hausheer did on or about the 12th day of September, A. D. 1917, at Worland, in the county and state aforesaid, commit a breach of the peace by then and there talking in a loud and unnecessary manner, by violent actions, and by other rude behavior, interrupt and disturb the peace of the inhabitants of the town of Worland, Washakie county, Wyo., and prayed that the said A. W. Hausheer might be arrested and dealt with according to law. Now, therefore, in the name of the state of Wyoming, you are hereby commanded forthwith to apprehend the said A. W. Hausheer and bring him before me to be dealt with according to law.

"Given under my hand this 12th day of September, A. D. 1917.

"J. W. Pulliam, Justice of the Peace."

There was a blank return on the warrant, which was not filled out or signed by the defendant. This fact, however, is of little importance, as the proceedings were discontinued the morning after the arrest and no trial had. Defendant thereupon went to the Dorman Hotel in Worland and looked over the register, for the purpose of ascertaining if the plaintiff was stopping there. He found that he was, and thereupon went to the plaintiff's room; the proprietor of the hotel going with him. He knocked at the door of the room, which being opened by the plaintiff, defendant said to him that he had a warrant for his arrest for a breach of the peace. The plaintiff had been in bed asleep, and after he had dressed defendant arrested him and took the plaintiff downstairs and over to the jail, and locked him up. Defendant telephoned the justice of the peace, but received no answer. Plaintiff remained in jail until morning, when he was liberated by the officer on duty during the day and left town. The defendant testified that he had the warrant above mentioned either in his hand or in his pocket when he arrested the plaintiff. The plaintiff testified that he asked the defendant if he had a warrant at the time of the arrest, and the defendant replied, "You will get your warrant in the morning," and that the defendant did not show any papers or warrant when he made the arrest.

Mr. Harkins, who was prosecuting attorney of Washakie county, Wyo., at the time of the arrest, testified that on the evening of September 12, 1917, he drew up the following complaint:

"Before J. W. Pulliam, Justice of the Peace.

"The State of Wyoming v. A. W. Hausheer.

"The State of Wyoming, County of Washakie—ss.:

"I, C. H. Harkins, county and prosecuting attorney of said county, do solemnly swear that on or about the 12th day of September A. D. 1917, in the county of Washakie, town of Worland, and state of Wyoming, the said A. W. Hausheer did willfully, maliciously, and unlawfully then and there by loud and unnecessary talking, and by threatening language, and by violent actions, and by other rude behavior, interrupt and disturb the peace of the inhabitants of the town of Worland, Washakie county, Wyo., contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Wyoming.          [Signed]   C. H. Harkins.

"Subscribed and sworn to before me this 12th day of September, 1917.

"J. W. Pulliam, Justice of the Peace.

"Filed this 12th day of September, 1917.

"J. W. Pulliam, Justice of the Peace."

—and swore to the same before the justice of the peace. The justice of the peace testified that he swore Harkins to the complaint and signed and issued the warrant, which he delivered to the defendant to serve. Pulliam could not testify whether the complaint was ever actually filed in his office or not. Harkins testified that he inclosed the complaint and warrant in an envelope and delivered it at Pulliam's office, but subsequently it was returned and taken back.

We do not attach much importance to whether the complaint was actually filed in the office of the justice of the peace. He could swear Harkins to the complaint at Harkins' office, where the evidence tends to show the complaint was sworn to and the warrant issued. Much evidence, as we have said before, appears in the record tending to show that the plaintiff was in Worland for the purpose of inducing laborers to go to Ft. Collins, Colo., and work for the Sugar Company at that place, and that the Wyoming Sugar Company, for the purpose of keeping the laborers in Wyoming in its own service, devised a scheme whereby the plaintiff should be made to leave town. The direction of a verdict in favor of the Sugar Company, however, not being complained of, must be accepted as refuting such a claim so far as the Wyoming Sugar Company is concerned.

But, whatever truth there may be in the claim made, there is no evidence that the defendant was connected therewith, and if there is, he is not now being sued for malicious prosecution. Section 5902, C. S. Wyoming 1910, defines the offense for which the warrant was issued. Section 6131 provides that prosecuting attorneys may verify informations on information and belief. Section 1645 gave the defendant authority to make the arrest and confine plaintiff in jail until a trial or examination could be had. Section 1226 makes it obligatory upon the sheriff to serve process issued by the courts, and the above section placed upon the defendant the same duty and holds him to the same accountability as to all process placed in his hands. Pulliam was a judicial officer having jurisdiction of the offense charged in the complaint; his office being created by article 5, section 22, of the Constitution of the state of Wyoming.

[3] On this record the defendant contends that he was a mere ministerial officer, bound to execute the process of the court placed in his hands for service by the justice of the peace, and was in law fully protected thereby; that as an officer he had no right to question the authority of the court issuing regular process, and was not bound to inquire and had no right to inquire upon what information or evidence the magistrate acted, and that after having arrested the defendant he was within his rights and acted in accordance with the law of his state, under section 1645, supra, in placing plaintiff in jail until such time as judicial inquiry could be made respecting the offense of which he stood charged. We are of the opinion that this contention is sound. In the case of Erskine v. Hohnbach, 14 Wall. 613, 616 (20 L. Ed. 745), Justice Field, in delivering the opinion of the court, used the following language:

"Whatever may have been the conflict at one time in the adjudged cases as to the extent of protection afforded to ministerial officers acting in obedience to process, or orders issued to them by tribunals or officers invested by law

with authority to pass upon and determine particular facts and render judgment thereon, it is well settled now that, if the officer or tribunal possess jurisdiction over the subject-matter upon which judgment is passed, with power to issue an order or process for the enforcement of such judgment, and the order or process issued thereon to the ministerial officer is regular on its face, showing no departure from the law, or defect of jurisdiction over the person or property affected, then, and in such cases, the order or process will give full and entire protection to the ministerial officer in its regular enforcment against any prosecution which the party aggrieved thereby may institute against him, although serious errors may have been committed by the officer or tribunal in reaching the conclusion or judgment upon which the order or process is issued."

To the same effect are the following cases: Hofschulte v. Doe et al. (C. C.) 78 Fed. 436; Whitten v. Bennett et al. (C. C.) 77 Fed. 272; Carman v. Emerson, 71 Fed. 264, 18 C. C. A. 38; Bohri et al. v. Barnett, 144 Fed. 389, 75 C. C. A. 327; Jennings v. Thompson, 54 N. J. Law, 55, 22 Atl. 1008; Gordon v. West et al., 129 Ga. 532, 59 S. E. 233, 13 L. R. A. (N. S.) 549; State v. Weed, 21 N. H. 262, 53 Am. Dec. 188; Holz v. Rediske et al., 116 Wis. 353, 92 N. W. 1105; Clarke v. May, 2 Gray (Mass.) 410, 61 Am. Dec. 470; Mangold v. Thorpe et al., 33 N. J. Law, 134; Pankewicz v. Jess et al., 27 Cal. App. 340, 149 Pac. 997; Henline v. Reese, 54 Ohio St. 599, 44 N. E. 269, 56 Am. St. Rep. 736; 35 Cyc. 1737.

We have examined the cases cited by counsel for plaintiff, but do not find any of them contradicting the principle established by the above cases. We are clearly of the opinion that the justice of the peace in this case possessed jurisdiction over the subject-matter of the complaint upon which the warrant was issued, and that he had authority to issue the warrant for the plaintiff; that the defendant was a ministerial officer, with a warrant regular on its face showing no departure from the law or defect of jurisdiction over the person of plaintiff, and that said warrant gave the defendant full and entire protection in the enforcement of the warrant against any prosecution which the plaintiff might institute against him, although serious errors may have been committed by the justice of the peace in reaching his conclusion or judgment upon which the process was issued.

We are therefore of the opinion that the court erred in refusing to direct a verdict for the defendant, and that the judgment must be reversed, and a new trial granted; and it is so ordered.