A. Marlo MILLER, Appellant,

v.

Jack STINNETT and Clifford Shervee, Appellees.

No. 5757.

United States Court of Appeals Tenth Circuit.

July 9, 1958.

Rehearing Denied Aug. 11, 1958.

Huxman, Circuit Judge, dissented.

A. T. Hannett, Albuquerque, N. M. (G. W. Hannett and Thomas G. Cornish, Albuquerque, N. M., were with him on the brief), for appellant.

James B. Cooney, Farmington, N. M. (W. A. Keleher, A. H. McLeod, Russell Moore, Albuquerque, N. M., and Jack M. Morgan, Farmington, N. M., were on the brief), for appellees.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

In this diversity action against a police officer and a private instigator, the appellant seeks damages for wrongful arrest and imprisonment for violation of a city ordinance, said to be unconstitutional. At the conclusion of the appellant's opening statement to the jury, the court directed a verdict for the defendant-appellees, and this is an appeal from a judgment thereon.

■ Without indulging in any formal pleadings, and taking the opening statement as the true operative facts, the question is whether the appellant stated a claim upon which relief can be granted on any legally sustainable theory.

Thus considered, the facts are that appellant Miller is an itinerant vendor who takes orders for tailored clothing for men and women, which, after manufacture, is shipped in interstate and foreign commerce in the original package C. O. D. directly to the customer. The appellee Stinnett is a police officer in the town of Farmington, New Mexico; and the appellee Shervee is engaged in the clothing business at a fixed establishment in Farmington. A duly enacted ordinance of the town of Farmington imposed an occupational tax upon numerous occupations, trades and pursuits; provided for the issuance of licenses upon the payment of the tax; and fixed penalties for the violation thereof. Without having paid the tax or obtained a license under the ordinance, Miller went to the town of Farmington, measured prospective customers, obtained their orders, and forwarded them in interstate commerce to be filled and shipped directly to the customer in the usual manner. At the instigation of Shervee, officer Stinnett went to a certain place where Miller was engaged in measuring a prospective customer for clothing. After witnessing the measuring process, Stinnett, acting without a warrant, arrested Miller and took him in a police car to the jail and booked him for violation of the ordinance. Thereafter, Miller furnished bail and was released. On two previous occasions, Miller had been arrested, charged, tried and fined for violation of the same ordinance. On appeal the charges had been dismissed and Miller released. But at the commencement of this suit, this charge had not been dismissed or otherwise failed. At the time of the arrest in question, Stinnett and Shervee both knew that Miller claimed immunity from the incidence of the ordinance by reason of the fact that he was engaged in interstate commerce.

Since the arrest was not effected under authority of a warrant or other process issued by a court having jurisdiction and regular upon its face, appellee cannot invoke the rule which generally gives police officers immunity from liability who act merely as the administrative arm of the court issuing the process. Snyder v. Hausheer, 10 Cir., 268 F. 776; Reilly v. United States Fidelity & Guaranty Co., 9 Cir., 15 F.2d 314; Schneider v. Kessler, 3 Cir., 97 F.2d 542; Williams v. Franzoni, 2 Cir., 217 F.2d 533; Pallett v. Thompkins, 10 Wash.2d 697, 118 P.2d 190; Vallindras v: Massachusetts Bonding & Insurance Co., 42 Cal.2d 149, 265 P.2d 907; Brinkman v. Drolesbaugh, 97 Ohio St. 171, 119 N.E. 451, L.R.A.1918F, 1132; David v. Larochelle, 296 Mass. 302, 5 N.E.2d 571; Click v. Parish, 155 Ohio St. 84, 98 N.E.2d 293; Alexander v. Lindsey, 230 N.C. 663, 55 S.E.2d 470; Zeitinger v. Mitchell, Mo., 244 S.W.2d 91; 22 Am.Jur. False Imprisonment § 67. But the arrest was made for violation of the ordinance in the presence of the officer, and if the ordinance is valid, the arrest was lawful and no claim for false arrest can arise out of it. § 14–17–6 N.M.S.A.1953; Cave v. Cooley, 48 N.M. 478, 152 P.2d 886; City of Clovis v. Archie, 60 N.M. 239, 290 P.2d 1075. It is clear, however, that as applied to the activities of the appellant, the ordinance runs afoul of the federal Constitution. See Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760; Memphis Steam Laundry Cleaner v. Stone, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436; Annotation 162 A.L.R. 857. And see also §§ 60–2–1, 60–2–2, 60–2–3, 60–2–4, 60–2–5, N.M.S.A.1953. Indeed, the trial court assumed the inapplicability of the ordinance to the appellant and his right to injunctive relief against its enforcement as to him. The court went so far as to suggest a right of action for malicious prosecution. It took the view, however, that a claim for false arrest or imprisonment did not lie, because, as the trial court observed, a policeman is under no duty to interpret the law he is called upon to enforce; that an arrest otherwise lawful is not rendered unlawful because the statute or ordinance under which the arrest was made is subsequently declared invalid; that inasmuch as the arrest was made for acts committed in the presence of the officer constituting a violation of an ordinance valid on its face, no claim could be sustained against the arresting officer or the private person instigating the arrest.

The repeated arrests and detention of the appellant by the officer at the instance of Shervee, and the subsequent dismissal of the first two cases after imposition of fine, partakes of malicious prosecution. Of course if the appellant's statement made out a case for malicious prosecution, he is entitled to proceed upon it, regardless of his pleadings or stated legal theories. But, according to its common law definition, malicious prosecution is the malicious use of valid process to an unsuccessful end. It presupposes an innocent or acquitted accused. This claim is based on the last arrest and conviction—reference is made to the former aborted arrests and convictions apparently for the only purpose of showing malice and want of probable cause. As far as this record shows, no final disposition favorable to the appellant has been made of the charge which is the gravamen of this suit. Meanwhile, malicious prosecution will not lie for the last detention.

The appellant denies any intention to claim under the Civil Rights Act, 42 U.S.C.A. § 1981 et seq. in view of Agnew v. City of Compton, 9 Cir., 239 F.2d 226. But see Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240; Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281; Downie v. Powers, 10 Cir., 193 F.2d 760, 765.

But even so, the acts complained of here were intended to and did result in the appellant's conscious confinement without his consent, and it is civilly actionable unless privileged. See Restatement Torts, §§ 35, 36, 37. The detention is a form of assault and battery,

and is called false imprisonment. There is good and respectable authority for saying that an arrest made by a police officer for acts committed in his presence in violation of an ordinance valid upon its face, is privileged and not actionable for subsequent declaration of invalidity. These cases reason, as did the trial court, that public officers are entitled to assume the validity of the law they are sworn to uphold and enforce, and that it would be contrary to public policy to require such public officers to enforce laws, valid on their face, at the risk of holding them civilly liable if they are subsequently declared invalid. Wichita County v. Robinson, 155 Tex. 1, 276 S.W.2d 509; Bricker v. Sims, 195 Tenn. 361, 259 S.W.2d 661; Village of Dolton v. Harms, 327 Ill.App. 107, 63 N.E.2d 785; Golden v. Thompson, 194 Miss. 241, 11 So.2d 906; Odinetz v. Budds, 315 Mich. 512, 24 N.W.2d 193. See Annotation on Civil Liability of Law Enforcement Officers for Malicious Prosecution, 28 A.L.R.2d 646.

On the other hand, there is authority for holding the officer civilly liable for arrests made under statutes subsequently declared invalid. The rule is predicated upon the concept, first announced in Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178, to the effect that an unconstitutional act confers no rights, imposes no duty and affords no protection to anyone acting under authority of it. See Smith v. Costello, 77 Idaho 205, 290 P.2d 742, 56 A.L.R.2d 1020; 43 Am.Jur. Public Officers, § 284; 11 Am.Jur. Constitutional Law, § 149; Annotation 53 A.L.R. 268. And, this is so even in the absence of malice and in the presence of probable cause. See Annotation 137 A.L.R. 504. Good faith and honest belief is admissible only in mitigation of the damages. S. H. Kress & Co. v. Powell, 132 Fla. 471, 180 So. 757; Gogue v. Mac-Donald, 35 Cal.2d 482, 218 P.2d 542, 21 A.L.R.2d 639; Singleton v. Perry, 45 Cal.2d 489, 289 P.2d 794. Restatement protects the officer for an arrest without a warrant where he acts under a reasonable mistake of fact, but affords no protection where he acts, however reasonably, under a mistake of law, "other than a mistake as to the validity of a statute or ordinance." As to that, it expressly refrains from an opinion. See Restatement Torts, § 121, Caveat to Comment i.

New Mexico, whose law governs the legal sufficiency of the claim, has not expressly resolved the conflict, but in a recent action against an enforcement officer and a justice of the peace for both false imprisonment and malicious prosecution, the court sustained the claim, based upon "the trumpted up charge" that the complainant was driving on the wrong side of the road in violation of a city ordinance, the officers well knowing that no such ordinance was in existence. In that case, the process was void on its face, and both the officer and the judge acted "wholly without jurisdiction." Vickrey v. Dunivan, 59 N.M. 90, 279 P.2d 853, 855. There was ample room for malice and want of probable cause, and punitive damages were sought. And, since the prosecution was terminated in favor of the accused-complainant, the action was thus readily sustainable on either asserted theory of false imprisonment or malicious prosecution. But, the New Mexico court did not concern itself with nomenclature. It was content to rest the compensatory claim on the simple tort of unprivileged detention.

The only significant difference between the Vickrey case and ours lies in the fact that the arrest and detention in that case was executed under a knowingly nonexistent ordinance, and the prosecution thereunder had been formally determined in favor of the accused-complainant; while in our case, the arrest and detention was executed under an existent ordinance valid on its face, but invalid and inapplicable in fact. The charge had not been formally terminated, but, as we have seen, the ordinance was clearly inapplicable to the accused-complainant, and under the stated facts, both the arresting officer and the insti-

gator had good reason to know and believe that it was inapplicable and the charge therefore unsustainable. While a detention made in good faith reliance on an ordinance valid on its face, but invalid or inapplicable in fact may be privileged, certainly that privilege does not extend to a detention by those who know or have reason to believe that the ordinance is invalid or inapplicable. We think the stated facts susceptible to the permissible inference that the arrest and detention was not made in good faith reliance on the ordinance, but instead for the purpose of harassment to serve selfish ends, thus defeating privileged detention as in the Vickrey case. In short, we think the appellant stated a case for the trier of the facts.

As to the appellee, Shervee, who, on this record instigated the false arrest, it is well established and apparently agreed that he stands on the same footing with the arresting officer. And see 21 A.L.R.2d 643, 687, Subdivision 4, Sec. 19.

The judgment is reversed.

HUXMAN, Circuit Judge (dissenting).

I find myself in disagreement with my Associates in this case. As stated in the majority opinion, the town of Farmington, New Mexico, has an occupation tax ordinance on its statute books. It is a general ordinance apparently applying to all forms of endeavor or pursuits for profit, with certain exceptions not material herein. It imposes an occupation tax beginning at $5 per annum. It applies equally to all classes of occupations. It provides for applications for licenses, issuance of licenses, and makes it an offense to engage in business without having a license.

New Mexico has a statute (N.M.S.A. 1953 Comp. § 14–17–6) which is necessary to consider. It relates to the powers and duties of marshals and other peace officers and so far as material herein provides that such officers "shall apprehend any person in the act of committing any offense against the laws of the state or ordinances of the city, town or village, and forthwith bring such persons before the competent authority for examination and trial; * * * ".

As stated in the majority opinion, Miller was an itinerant vendor, taking orders for tailored clothing to be fitted and shipped in interstate commerce. He did not have a license to engage in business in Farmington. Some attention is given in the majority opinion to the fact that there had been previous arrests and there are suggestions of bad faith in making these arrests which might partake of malicious prosecution. I lay these aside because, as I read the majority opinion, it is not based on bad faith or acts that smack of malicious prosecution. I think the statement is warranted that the record is devoid of anything which would in any way tend to establish bad faith on the part of the officer making the arrest, say what you may about the conduct of the local merchant.

Here are the essential facts. At the instigation of Shervee, a local merchant, Officer Stinnett went to a place where Miller was engaged in measuring a purchaser of clothing and, after witnessing the measuring, arrested Miller without a warrant and took him to jail, where he made bond and was released. Both Stinnett and Shervee knew that Miller claimed immunity from the ordinance.

The majority opinion, as I read it, is predicated upon the assumption that the Farmington occupation tax ordinance is unconstitutional. I am not so sure in my own mind that this is so. Reliance for this position is placed upon the so-called drummer ordinance cases, beginning with the early case of Robbins v. Shelby County Taxing District, 120 U. S. 489, 7 S.Ct. 592, 30 L.Ed. 694, and adhered to by a divided court in the later cases of Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760, and Memphis Steam Laundry Cleaner v. Stone, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436. The Farmington ordinance in many respects is vastly different from the ordinary drummer ordi-

nances considered by the Supreme Court in these cases. But since in my view the validity of the ordinance is immaterial to the fundamental issue, the question need not be developed.

To me the single question is, can an officer who makes an arrest for the violation of an ordinance committed in his presence, which by law he is required to make,[1] be subjected to liability if thereafter it should be judicially determined that the ordinance was void and, therefore, in fact no offense had been committed. To so hold would in my opinion be against public policy and would cause a complete break-down in law enforcement. To so hold would mean that if an officer were asked to make an arrest without a warrant for a violation of an ordinance, committed in his presence, when the statute required him to do so, he would be warranted in refusing. He might well say, "I do not know whether this ordinance is valid. Go institute a declaratory judgment action and have its validity determined and then I will act."

By the great weight of authority, in fact almost by unanimous authority, it is held that an arrest made by an officer for acts committed in his presence in violation of ordinances valid upon their face are privileged and do not subject him to liability if thereafter the ordinance is held void. The reason for this is well stated by the Tennessee Supreme Court in Bricker v. Sims, 195 Tenn. 361, 259 S.W.2d 661, 664, where the Supreme Court said, "The general public welfare, and more especially the peace and good order of society, will not admit of ministerial officers being the judge of the constitutionality of statutes and ordinances. Their failure and refusal to enforce the law as written, in the absence of any proper adjudication of unconstitutionality, would be intolerable." Of all the cases relied upon by the majority for a contrary holding, only Smith v. Costello, 77 Idaho 205, 290 P.2d 742, involves the liability of a peace

officer acting under an invalid statute and that case did not involve the liability of an officer for making an arrest under such a statute without a warrant.

In City of Clovis v. Archie, 60 N.M. 239, 290 P.2d 1075, the New Mexico Supreme Court construed the statute requiring an officer to make an arrest without a warrant for an offense committed in his presence. In that case Archie was arrested without a warrant and on trial was convicted. On appeal, it was contended that the arrest was illegal because made without a warrant. The Supreme Court, referring to the statute, held that thereunder an arrest without a warrant was lawful. The case of Vickrey v. Dunivan, 59 N.M. 90, 279 P.2d 853, 855, by the New Mexico Court, upon which reliance is placed by the majority, is clearly distinguishable upon the facts. The arrest there was made for the violation of a city ordinance which did not exist and for an offense which was committed, if at all, outside the city limits. Under these facts, the officer was held liable for false arrest because he did not act even under color of ostensible authority and was wholly without jurisdiction to act. The Court, however, recognized the general rule of non-liability of officers acting under color of authority. In the opinion it is stated, "No rule is more firmly established than that judicial officers are not liable for the erroneous exercise of judicial powers vested in them; * * *".

I have been able to find only one case directly in point. In Bricker v. Sims, 195 Tenn. 361, 259 S.W.2d 661, 664, the plaintiff averred that he had been unlawfully arrested without a warrant, for the violation of an ordinance which was unconstitutional and void, and sued the arresting officers for false arrest. The officers' demurrer to the complaint was sustained, and the case was dismissed. On appeal, the decision was affirmed. The Tennessee Court laid down the principles which to me are basic in such clear language that I quote there-

---

1. Under the ordinance, Stinnett was required to make the arrest because the violation of the license ordinance was committed in his presence.

from at some length. The Court said "'An unconstitutional act is not void but voidable only and ministerial officers are therefore authorized to treat every act of the Legislature as prima-facie valid and they are not liable for any acts committed under an unconstitutional statute on account of its unconstitutionality.'" And "Ministerial officers are not as a general rule permitted to question the validity of a statute or city ordinance." And "'Every act of the Legislature is presumptively constitutional until judicially declared otherwise, and the oath of office "to obey the Constitution," means to obey the Constitution, not as the officer decides, but as judicially determined.'" Because I agree wholeheartedly with the pronouncement of the Tennessee Court that "The general public welfare, and more especially the peace and good order of society, will not admit of ministerial officers being the judge of the constitutionality of statutes and ordinances." and that "Their failure and refusal to enforce the law as written, in the absence of any proper adjudication of unconstitutionality, would be intolerable.", I am forced to respectfully dissent.